### Bernard De Santos *v.* Charles H. Taney.

*The right of a broker to a commission upon a sale, depends entirely upon the completion of the sale, and brokerage is not due until the sale is executed.*

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.
*G. & C. E. Schmidt,* for plaintiff. *Hunt & Denegre,* for defendant and appellant.

BUCHANAN, J. The plaintiff, a real estate broker, was employed by defendant to sell three houses; and in October, 1855, *P. Avegno* made an offer, through plaintiff, to defendant, to buy the houses for fifteen thousand five hundred dollars cash. The defendant in writing accepted this offer. On the 31st of October, 1855, plaintiff notified defendant that the act of sale of the said houses was ready for signature at the office of *Mr. Ducatel,* Notary. But a discussion arose at the Notary's office between the defendant and *Mr. Aveyno,* about the payment of the taxes for the current year : *Avegno* stating that he had agreed with the broker to be responsible for no more than two-twelfths of the same; while *Taney* stated his intention to be, to have the sum named for his property, without any deduction whatever for taxes. Upon this, the bargain was broken

off. In the words of *Avegno*, examined as a witness for plaintiff, he "did not buy the property, because *Taney* wanted witness to pay the taxes for the whole year of 1855." And in his cross-examination, *Mr. Avegno* says: "when witness mentioned to *Mr. Taney* the agreement he had made with *Santos* about the taxes, *Taney* remarked that if he, witness, did not pay the taxes for 1855, he could (not) buy the property. Witness answered that it was indifferent to him."

The right of a broker to a commission upon a sale, depends entirely upon the completion of the sale. This was settled by this court in the cases of *Blanc* v. *The Improvement Bank* and *Didion* v. *Duralde*, both reported in 2d Robinson. In the former of these cases, Judge Martin says: "In the contract of brokerage, nothing is paid unless a bargain is effected." The learned counsel for plaintiff argues that in the case at bar there was in fact a bargain, although there was no sale executed. The evidence scarcely bears out this assertion. Nothing was said in the written proposition and acceptance of the parties, about the taxes of 1855, although it appears that those taxes had been a subject of agreement between *Avegno* and the broker. But even supposing the understanding and agreement of the parties upon the terms of sale to have been complete, yet, before the sale was completed by the signature of a notarial conveyance and the payment of the price, the parties, by common consent, released each other from their reciprocal engagements. We understand the word "*bargain*" to have been used by Judge Martin in a more extended signification, as meaning not an agreement executory merely, but an agreement executed. In all the cases cited by plaintiff's counsel—*Gottschalk* v. *Jennings*, 1st Annual; *Jenkins* v. *Trott*, 3d Annual; *Levistones* v. *Landreaux*, and *Lestrade* v. *Pereira*, 6th An.—the contract was consummated, although, through bad faith on the part of the principal towards the broker, the contract had been suspended and in appearance abandoned. But the circumstances of the present case present no analogy to those cited. The defendant has practiced no fraud upon the plaintiff. Whether he has even sold the property to any one, does not appear. But it is certain, he has never sold it to *Avegno*, the party whom plaintiff had introduced to defendant. Negotiations for sales through brokers, interrupted and broken off at every stage of progress towards completion, are of daily and hourly occurrence. But all the authorities confirm the doctrine of Judge Martin, as we understand it, that no brokerage is due until the sale is complete and executed, that is to say, until the consideration of the sale has passed to the vendor.

It is, therefore, adjudged and decreed, that the judgment appealed from be reversed, and ours is for defendant, with costs in both courts.

SPOFFORD, J., on application for a re-hearing. I concur in refusing a re-hearing, because there does not appear to have been a perfect bargain, and this on account of the broker's neglect to stipulate clearly concerning the taxes. I do not think it necessary that the consideration should have passed, but I consider brokerage earned so soon as the broker has effected a complete bargain between the parties.