Estelle ALTMAN, Appellant,

v.

Samuel DE JONG, trading as S. De Jong Realty, Appellee.

No. 1614.

Municipal Court of Appeals District of Columbia.

Argued March 7, 1955.

Decided May 4, 1955.

D. Carroll McGean, Washington, D. C., for appellant.

John P. Labofish, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellant listed an apartment house for sale with appellee, a real estate broker. The broker procured a written offer to buy which appellant refused. The broker then brought action for his commission and this appeal is from a judgment in his favor. There is no question that the proposed purchaser was ready, able and willing to buy. The only question is whether the offer met appellant's terms. Any material deviation

would defeat the broker's right to a commission.[1]

Appellant's terms, stated on the listing card, were a price of $18,500, "Minimum $13,000 Cash; will take balance 2nd trust $10 per thousand." The offer was to buy at $18,500, payable $13,000 cash and the balance secured by second deed of trust payable $55 per month with interest at 5%. The offer reserved to the buyer the right to place a first deed of trust in "any amount obtainable by him."

Appellant contends that the offer did not meet her terms in that she did not agree to take a second trust subject to a first trust of unlimited amount, and that she did not agree to a five per cent rate of interest on the second trust. There may be merit to this contention, but it is unnecessary to consider it as we think a second point is dispositive of the case.

The offer was submitted on a printed form in common use in this jurisdiction. The form covers a single page and has spaces for signatures at the bottom of the page. There is little space on the form for insertion of special provisions. In the present case, there was typed in the body of the form: "Schedule of rents on reverse side." On the reverse side there was typed: "The following schedule and provisions are incorporated in this agreement and become part thereof." Beneath this was typed a rent schedule among a number of provisions. One provision gave the purchaser the option of cancelling the agreement if he could not obtain a first deed of trust of at least $10,000. Another gave him the option to cancel the agreement if he was unable to obtain an apartment house license and occupancy permit without expenditure of funds other than cost of the license fee. Clearly these provisions went beyond the terms authorized by appellant and defeated the broker's claim if they were part of the offer.

The broker says nothing on the reverse side of the offer was a part of the offer except the rent schedule which is not in question. His contention that the reverse side was no part of the offer apparently is based on the fact that on the reverse and beneath the typed matter were spaces for signatures, and the proposed purchaser did not sign in the space indicated for his signature. In other words, his contention is that by signing the front page and failing to sign the reverse page the offeror did not make the provisions on the reverse side a part of his offer, other than the rent schedule to which reference was made on the front page.

Although an agreement or other instrument may appear to be complete in itself on one page of paper, matter appearing on the reverse side may be part of it. If placed there prior to execution and intended as a part of the agreement, the signatures of the parties on the front page are sufficient to authenticate that which appears on both the front and reverse sides.[2] Such intention is usually manifested by reference on the front to the matter on the back. Here there was reference in the body of the printed form to additional matter written on the back. It is true that reference was only to a rent schedule, but the schedule was included with provisions under a heading which purported to make not only the schedule, but the provisions also, a part of the agreement. It is also true that spaces for signatures were indicated on the reverse side and the purchaser signed only on the front. This may raise some doubt as to whether he intended the matter on the reverse to be a part of his offer, but immediately the question arises as to why the provisions were written if not intended as part of the offer, and why, if they were not so intended, they were not stricken out so as to make plain that they constituted no part of the offer.

It may be noted that the proposed purchaser, called as a witness for the broker,

1. Rowe v. Shilby, 86 U.S.App.D.C. 74, 179 F.2d 807, 18 A.L.R.2d 373.

2. Bonewell & Co. v. Jacobson, 130 Iowa 170, 106 N.W. 614, 5 L.R.A.,N.S., 436; Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844; Brown v. State Automobile Ins. Ass'n of Des Moines, Iowa, 216 Minn. 329, 12 N.W.2d 712.

gave no explanation why the provisions were placed on the back, or whether he intended them to be part of his offer, or why he signed only on the front.

It is not necessary for us to decide, and on this record we could not decide, whether appellant would have been bound by the provisions on the reverse had she accepted the offer by signing on the front. But we do hold that there was a substantial question whether the reverse constituted part of the offer and appellant was entitled to reject the offer in the form presented. The record indicates that she rejected it for other reasons as she refused to even examine the offer. But regardless of her reason for rejection, the broker's right to a commission is dependent on a showing by him that he procured an offer which clearly and unequivocally, met the authorized terms. This he failed to do.

Reversed with instructions to enter judgment for appellant.